HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| 395 LAMPE, LLC<br><br>        Plaintiff, Counterclaim Defendant,<br><br>  v.<br><br>KAWISH, LLC, et al.,<br><br>        Defendants, Counterclaim Plaintiffs, Third-Party Plaintiffs,<br><br>WAYNE L. PRIM, et al.,<br><br>        Third-Party Defendants. | CASE NO. C12-1503RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on several motions. Only Plaintiff 395 Lampe, LLC ("Lampe") requests oral argument, and only as to its motion to stay or dismiss. The court finds oral argument unnecessary. For the reasons stated below, the court DENIES Lampe's motion to stay or dismiss (Dkt. # 20), GRANTS the unopposed motion of one of Lampe's attorneys to withdraw (Dkt. # 37), DENIES Lampe's motion for partial surrender of an injunction bond (Dkt. # 39), and DENIES the motion of Defendants Kawish, LLC ("Kawish") and Timothy Blixseth to refer this case to bankruptcy court (Dkt. # 45). The court orders Kawish and Blixseth to show cause why the court should not stay their claims.

ORDER – 1

## II. BACKGROUND

In this case, the parties draw yet another court into a dispute over various debts. That dispute has spawned suits in at least four state courts in three states and at least two bankruptcy courts in two states. The court begins by describing the disputes, omitting unnecessary details. The court makes no findings of fact in this section of this order, it merely provides context for its later analysis.

Although nearly a dozen entities play a role in this dispute, the principals are Blixseth and Wayne Prim. They once shared common business interests, but their interests now diverge sharply.

Lampe, an entity that Prim controls, is the holder of at least three promissory notes evidencing at least $16 million in debt. Kawish, an entity that Blixseth controls, issued two of the notes; Blixseth guaranteed them. The issuer of the other note is Overlook Partners, LLC ("Overlook"), an entity that Prim and Blixseth (or entities under their control) jointly own. Blixseth also guaranteed the Overlook note. A Medina, Washington property (that Kawish owns and in which Blixseth resides) serves as collateral for at least two of the notes.

Blixseth (or an entity under his control), an entity under Prim's control, and an independent entity own Western Pacific Timber LLC ("WPT"). In connection with an agreement to restructure some of the debts mentioned above, Blixseth entered an agreement pledging his WPT interest as additional collateral.

Blixseth and Kawish allegedly defaulted on all of these debts. Among other things, Lampe exercised its rights under the pledge agreement to claim ownership of Blixseth's WPT interest. Lampe also attempted to execute on Blixseth's guaranties. Lampe (and other entities under Prim's control) sued Blixseth in April 2012 in state court in Washoe County, Nevada to execute on the guaranties. Lampe filed a second suit against Blixseth and an entity under his control in the same court in May 2012 to obtain a judicial declaration of the value of the WPT interest that Lampe had seized via the pledge

ORDER – 2

agreement. There is also apparently a lawsuit in Montana in which persons or entities under Prim's control are attempting to foreclose on Montana property to satisfy the Overlook note. Blixseth submitted the complaints in the Nevada actions in connection with these motions. No party submitted any evidence of the Montana action. No party has revealed what, if anything, has occurred in the Nevada or Montana lawsuits.

As an offshoot of the first Nevada suit, Lampe sued Blixseth and Kawish in May 2012 in King County Superior Court to foreclose on the Medina property. Kawish removed the case to this court. It did not stay long. The Honorable Marsha J. Pechman remanded it in July 2012 for lack of subject matter jurisdiction. No. C12-1062MJP, Dkt. # 38.

Before Judge Pechman remanded the case, Kawish and Blixseth asserted counterclaims against Lampe and claims against four third-party defendants (Prim, two entities under his control, and Overlook). No. C12-1062MJP, Dkt. # 17. Most of Blixseth's and Kawish's nine causes of action depend in some way on the status of Blixseth's interest in WPT. Blixseth contends that his WPT interest is worth far more than his total debts to Prim and his entities. He contends that Lampe's seizure of his WPT interest extinguishes those debts, prohibiting Lampe from seizing the Medina property or other collateral. He also appears to contest that Lampe had the right to seize his WPT interest and to contend that Prim misled him about how he would collect on the debts Blixseth owed. Two of his causes of action ask the court to dissolve Overlook and declare that Overlook is obligated to pay him for the Overlook debt that he guaranteed.

After Judge Pechman remanded this action to King County Superior Court, Kawish filed a bankruptcy petition in the United States Bankruptcy Court for the Western District of Washington ("the Bankruptcy Court").[1] Shortly thereafter, Kawish removed

---

[1] In 2011, three states' tax authorities filed an involuntary bankruptcy petition against Blixseth in the United States Bankruptcy Court for the District of Nevada. The Ninth Circuit Bankruptcy Appellate Panel recently vacated the dismissal of that petition. Although Blixseth mentions the Nevada bankruptcy, it appears to have no impact on the dispute before this court.

ORDER – 3

this case again, this time invoking 28 U.S.C. § 1334, which defines the scope of the federal courts' subject matter jurisdiction to hear bankruptcy claims, and 28 U.S.C. § 1452, which permits the removal of claims within that grant of jurisdiction. No one disputes that any effort to foreclose on the Medina property is subject to the automatic bankruptcy stay associated with the Kawish bankruptcy petition. At present, the only active claims in this litigation are Kawish's and Blixseth's claims against Lampe and the third-party defendants. Once the case arrived in this court, Lampe recalendared its motion to stay or dismiss it. The court now turns to that motion, along with Blixseth's motion to refer this case to the Bankruptcy Court and Lampe's motion for relief arising from an injunction bond.

### III. ANALYSIS

**A.    Kawish Waived Automatic Referral to the Bankruptcy Court.**

If Kawish had complied with applicable court rules, this case would be in the Bankruptcy Court. Kawish correctly notes that this suit invokes the court's subject matter over bankruptcy-related cases (28 U.S.C. § 1334), and that this District (like every federal district court) has invoked its authorization to automatically refer bankruptcy-related cases to the Bankruptcy Court. *See* 28 U.S.C. § 157(a) (authorizing referrals of cases arising under Title 11 of the United States Code, as well as related cases, "to the bankruptcy judges for the district"); W.D. Wash. Gen. Ord. (Nov. 26, 1984) ("This court hereby refers to the bankruptcy judges of this district all cases under [T]itle 11, and all proceedings arising under [T]itle 11 or arising in or related to cases under [T]itle 11."). A district's bankruptcy judges "constitute a unit of the district court" known as the district's bankruptcy court. 28 U.S.C. § 151.

Rather than devote district court resources to scouring the docket for cases that ought to be "automatically" referred to the bankruptcy courts, both the federal courts generally and individual district and bankruptcy courts have developed rules to facilitate

ORDER – 4

referrals to the bankruptcy court.  All of those rules require a party in a case subject to automatic reference to file documents *in the bankruptcy court*.

The rules governing removal of bankruptcy-related state court cases are no exception.  The Federal Rules of Bankruptcy Procedure require a notice of removal "to be filed with the clerk for the district and division" in which the state court is located and explain that the "clerk" is the clerk of the bankruptcy court.  Fed. R. Bankr. P. 9027(a); 9001(3).  This court's local rules require a party removing a case related to a bankruptcy proceeding to "file th[e] notice of removal with the Clerk of the Bankruptcy Court."  Local Rules W.D. Wash. LCR 101(f).  They specifically instruct a party not to file a notice of removal in this court.  *Id.* ("A party should not file the notice with the Clerk of the District Court for the Western District of Washington.").[2]  The Bankruptcy Court's local rules are also unambiguous.  Local Rules Bankr. W.D. Wash. 9027-1 ("A notice of removal required to be filed in the Western District of Washington pursuant to Fed. R. Bankr. P. 9027 shall be filed with the clerk of court of the Bankruptcy Court . . . ."

Kawish ignored these rules and filed its notice of removal with the clerk of the District Court.  Its explanation for doing so (which it did not provide for more than three months after filing their notice of removal) is that the rules conflict with 28 U.S.C. § 1452.  Section 1452 states that a party "may remove any [bankruptcy-related] claim or cause of action . . . to the district court for the district where such civil action is pending . . . ."  Kawish believes that rules that require the filing of a notice of removal with the clerk of the bankruptcy court (which is, per 18 U.S.C. § 151, a "unit of the district court") are invalid in light of § 1452.  Indeed, a few district courts have reached the same conclusion, although Kawish points to none within the Ninth Circuit.  *See Bridge Assocs., LLC v. North River, LLC (In re Durango Ga. Paper Co.)*, No. 02-21669,

---

[2] When Kawish removed this action, a previous version of this court's local rules was in effect. Although the court cites the current version of the rules today, its predecessor was identical in all respects pertinent to this order.

ORDER – 5

Adv. No. 09-2008, 2009 Bankr. LEXIS 4243, at *6-9 (S.D. Ga. Bankr. May 8, 2009) (citing cases). In Blixseth's most recent motion, he contends that following the federal rules and the local rules would give rise to an "automatic appellate issue." Dkt. # 45 at 5. He does not, however, point to a single court of appeals opinion in which this "automatic" issue has arisen.

Because Kawish did not attempt to comply with the federal or local rules, the court need not decide if the local rules and federal rules are valid; it suffices to rule that Kawish waived the automatic reference of this case. There is no dispute that this court has jurisdiction to preside over this litigation. Kawish contends, at most, that it should have been "automatically" referred to the Bankruptcy Court despite its refusal to follow the rules that facilitate automatic references. Had Kawish or Blixseth promptly moved to refer the case, the court likely would have looked past Kawish's failure to abide by the rules. Instead, Blixseth waited for four and a half months after removal, filing his motion to refer the case on January 23.[3] In the meantime, Lampe noted three motions in this court. Under these circumstances, and because there is no dispute that the court has subject matter jurisdiction, the court finds that it would be inequitable to refer this action to the Bankruptcy Court. The court now turns to Lampe's pending motions.

**B.     The Court Cannot Stay or Dismiss Blixseth's Claims on the Record Before It.**

Lampe asks the court to dismiss or stay Blixseth's claims. It asserts that this is not a proper venue for these claims and that Blixseth's claims are compulsory counterclaims in one or more of the Nevada lawsuits.

**1.     Lampe Fails to Prove that Washington Is an Improper Venue.**

There is no basis to conclude that Washington is an improper venue for Blixseth's claims. Among other things, even Lampe recognizes that Washington is the proper venue for its already-stayed foreclosure claim and Kawish's claim for an injunction to

---

[3] Blixseth mentioned his belief that this case should have been automatically referred in briefs opposing Lampe's motions in late October and in early December. Dkt. ## 34, 41.

ORDER – 6

prevent the foreclosure.  Although those claims are currently subject to the automatic stay arising from the Bankruptcy Court proceeding, they remain viable claims that Lampe has not asked to sever.  Nor has he asked to sever Blixseth's claim to dissolve Overlook, which is a Washington limited liability company.  Lampe does not explain how any court other than a Washington court could order the dissolution of Overlook.  Putting aside the presence of properly-venued claims, the only improper venue argument that Lampe advances is that forum selection clauses in Blixseth's guaranties and notes dictate that Nevada is the proper venue.  Lampe is mistaken; although Blixseth agreed that Nevada was *a* proper venue for certain claims, he did not agree to sue exclusively in Nevada.

       With one exception, each of the notes and guaranties that obligate Lampe or Blixseth contain a clause in which Lampe or Blixseth *consent* to venue in two Nevada counties.  *E.g.*, Sweet Decl. (Dkt. # 21), Ex. 4 ("Maker consents to jurisdiction and venue of Washoe County or Douglas County, NV.").  Mere consent to venue in one forum does not preclude proper venue in another forum.  *See Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77-78 (9th Cir. 1987) (distinguishing between mandatory and permissive forum selection clauses).  The notes and guaranties are therefore no obstacle to venue in Washington.  Moreover, the agreement in which Blixseth pledged his WPT shares as additional security does not contain a forum selection clause.

       The only forum selection clause that even arguably selects Nevada as the exclusive forum is in a May 2008 agreement in which Blixseth promised to take a variety of steps in exchange for a restructuring of his debts.  That clause declares that "any action or suit to interpret, [sic] enforce any provisions of this Agreement shall be in Douglas or Washoe County."  Sweet Decl. (Dkt. # 21), Ex. 1.  The agreement requires Blixseth to execute several notes and guaranties, and makes reference to existing notes.  By its terms, the forum selection clause does not apply to the extent one of those documents contains a different venue provision.  *Id.* (applying venue clause "[e]xcept as set forth in any

ORDER – 7

document referenced, [sic] herein"). Even if another venue clause does not override this agreement's forum selection clause, Lampe has not shown that Blixseth's claims in this action would call upon a court to interpret or enforce this specific agreement.

Although Nevada may be a proper venue for this dispute, the court holds that Blixseth did not agree to venue in Nevada to the exclusion of a Washington forum. This forum is not an improper venue, and the court cannot dismiss Kawish's and Blixseth's claims on that basis. Lampe has not asked the court to transfer venue, and the court suggests no opinion on whether transfer would be appropriate.

### 2. Lampe Has Not Shown that Blixseth's Claims are Compulsory Counterclaims in the Nevada Actions.

Alternatively, Lampe contends that Blixseth cannot bring his claims here because they are compulsory counterclaims in the Nevada actions. The issue that Lampe raises is one of Nevada law, but Lampe cites no Nevada authority. It relies solely on Federal Rule of Civil Procedure 13(a), which dictates only those counterclaims that are compulsory in a federal case. Federal Rule 13(a) does not apply to the Nevada lawsuits.

### 3. Lampe Has Not Demonstrated Cause to Stay this Case, But a Stay May Be Appropriate.

In addition to its unsuccessful arguments for dismissal, Lampe asks the court to stay this case in favor of the Nevada and Montana lawsuits. With the exception of a claim for injunctive relief to prevent foreclosure on the Medina property, which no one disputes is subject to an automatic bankruptcy stay, Lampe cites no authority for its request. Its argument, essentially, is that Blixseth's claims here are "duplicative" of the Nevada litigation and "[r]eliant" on the Montana action. Dkt. # 20 at 7-8. Lampe does not attempt to demonstrate that Blixseth's claims are actually being litigated in Nevada or Montana. Lampe also does not attempt to show that the court has discretion to stay this case, which would require it to invoke the doctrine first announced in *Colorado River Conservation Dist. v. United States*, 424 U.S. 800 (1976). *See R.R. Street & Co. v.*

ORDER – 8

*Transport Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011) (articulating eight factors that determine whether "exceptional circumstances" exist to invoke *Colorado River* doctrine to stay federal case in favor of state litigation). Without substantially more evidence regarding the Nevada and Montana litigations, the court is in no position to make a discretionary decision to stay this case.

Lampe's motion and the complaints in the Nevada cases demonstrate that it is probably a bad idea (to say the least) for Blixseth to attempt to litigate his claims in this forum. Lampe filed the Nevada cases before Blixseth brought his claims, and they are likely off to a substantial head start. It seems likely, based on the complaints in the Nevada action, that the Nevada courts will arrive at judgments that have some preclusive effect on Blixseth's claims here. For example, if the Nevada court gives Lampe and Prim a declaratory judgment as to an appropriate means to dispose of Blixseth's WPT interest, it will likely be determinative of his WPT-based claims in this case. And to the extent that Blixseth seeks *in rem* relief as to Montana property, this court cannot grant him relief. The course of action that Blixseth has chosen seems inimical to his own interests. That is not, however, a sufficient reason for the court to stay this action.

Nonetheless, in light of the concerns of judicial economy and other interests that animate the *Colorado River* doctrine, the court will require the parties to demonstrate that it is appropriate to move forward with this case. *See R.R. Street & Co.*, 656 F.3d at 978-79 (directing the court to consider, among other things, the "desire to avoid piecemeal litigation," the "desire to avoid forum shopping," and "whether the state court proceedings will resolve all issues before the federal court"). This order will conclude with an order to show cause why the court should not stay this litigation.

**C.     No Party Has Shown A Right to Relief on Overlook's Injunction Bond.**

The day after Judge Pechman remanded this case to King County Superior Court, third-party defendant Overlook filed a motion for a temporary restraining order ("TRO")

ORDER – 9

to prevent the sale of the Medina property. The Superior Court's ex parte department granted the TRO on July 31, but required Overlook to post a $25,000 bond.

Overlook is a limited liability partnership whose sole members are Lampe and a limited partnership that Blixseth controls. Blixseth has a management role in Overlook. According to the King County Superior Court, however, that management role did not authorize Blixseth, after suing Overlook, to hire counsel for Overlook to seek an injunction to prevent Lampe from foreclosing on the Medina property. In particular, the court observed the conflict of interest inherent in Blixseth first suing Overlook then hiring counsel to defend Overlook. Aug. 23, 2012 King Cty. Super. Ct. Ord. (Dkt. # 17-5). On August 24, that court vacated the TRO and disqualified Overlook's counsel. Not long thereafter, Kawish removed the case here.

After removal, Lampe moved in the Superior Court for an order directing partial surrender of the bond to pay its attorney fees in opposing the TRO. The Superior Court found that it had no jurisdiction to grant or deny the motion, and ordered instead that the bond be transferred to this court. Oct. 29, 2012 King Cty. Super. Ct. Ord. (Dkt. # 39, Ex. 1); Nov. 21, 2012 King Cty. Super. Ct. Ord. (Dkt. # 39, Ex. 2).

Lampe has now renewed its motion for payment of its attorney fees from the bond, in the guise of a motion for "partial surrender" of about $12,000 from the bond.

The court observes that the record is silent as to whether Overlook obtained a bond (*i.e.*, a surety guaranteeing payment in the event that Overlook did not or could not pay itself) or deposited money in lieu of a bond. This court has no record of receiving notice of the bond or a monetary deposit, and no party has provided a copy of the bond in connection with Lampe's motion.

In any event, both Lampe and Kawish ignore that it is Overlook's obligation that the bond or deposit secures. If Lampe wants its attorney fees from its defense against Overlook's TRO motion, it must seek relief against Overlook. So far as the record

ORDER – 10

reveals, Overlook has not entered a valid appearance in this action.[4] There is no evidence that Lampe notified Overlook of its motion. Absent proof that either Blixseth or Kawish has authority to act on Overlook's behalf, neither of those parties has standing to oppose to Kawish's motion for partial surrender. The court therefore grants no relief on the motion for partial surrender. If any party wishes to take further action with respect to the "bond," it must, at a minimum, provide the court with a copy of the bond.

Before issuing its order to show cause, the court acknowledges that Blixseth's statements in several of his pleadings that this court recused itself from a previous action involving some of the same parties. No. C12-948 (Dkt. # 13). As is the court's standard practice, it stated no reason for the recusal. Blixseth does not request that the court recuse from this case, or offer any basis for recusal. He nonetheless requests that the court decide whether it will recuse from this case for whatever reasons made it recuse from the previous action. The court declines to recuse itself from this case.

## IV. ORDER TO SHOW CAUSE

The court orders Kawish and Blixseth to show cause why the court should not stay this action in whole or in part, in favor of the Nevada or Montana lawsuits. They shall respond to this order in a written submission no later than February 28, 2013. That submission shall be no longer than 15 pages, it shall not unnecessarily repeat background information that the parties have already summarized in multiple briefs, and it shall *specifically* cite relevant evidence and legal authority.[5] If Lampe wishes to respond, it shall do so in a written submission subject to the same limitations no later than March 11.

---

[4] Lampe asserts that none of the third-party defendants has entered an appearance in this action. The court need not decide if Lampe is correct, although the record suggests that Prim controls Lampe and all of the third-party defendants (with the possible exception of Overlook). It suffices to note that none of the third-party defendants has submitted anything to this court since Kawish removed the case for the second time.

[5] Blixseth's submissions in support of the motions now before the court do not contain a single pinpoint cite to any precedent. *See* Local Rules W.D. Wash. LCR7(e)(6) (requiring pinpoint citations to evidence and legal authority). The court will summarily strike any future submission from any party that does not include pinpoint citations.

ORDER – 11

## V. CONCLUSION

For the reasons stated above, the court orders as follows:

1) The court DENIES Lampe's motion to dismiss or stay this case. Dkt. # 20.

2) The court DENIES Kawish's motion to refer this case to the Bankruptcy Court. Dkt. # 45.

3) The court DENIES Lampe's motion for relief related to Overlook's injunction bond. Dkt. # 39.

4) The court GRANTS Lampe's unopposed motion to permit one of its attorneys to withdraw. Dkt. # 37. The clerk shall terminate Jody McCormick as counsel of record.

5) The parties shall respond to the above order to show cause.

6) The clerk shall ensure that a copy of this order reaches the Honorable Marc Barreca, who is presiding over Kawish's bankruptcy proceeding. If the Bankruptcy Court believes that reference of this case in whole or in part would facilitate the proper disposition of the Kawish bankruptcy estate, it may inform the court.[6]

DATED this 13th day of February, 2013.

Richard A. Jones
The Honorable Richard A. Jones
United States District Court Judge

---

[6] The court takes judicial notice of the records in the Kawish bankruptcy proceeding. They reveal that the bankruptcy court has already found that the automatic stay does not apply to the Nevada or Montana lawsuits. No. 12-10959MLB, Dkt. # 68.

ORDER – 12