HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

395 LAMPE, LLC, et al.

        Plaintiffs, Counterclaim
        Defendants,

      v.

KAWISH, LLC, et al.,

        Defendants, Counterclaim
        Plaintiffs, Third-Party
        Plaintiffs,

      v.

WAYNE L. PRIM, et al.,

        Third-Party Defendants.

CASE NO. C12-1503RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on four motions.  The Blixseth Entities ask the court to reconsider its January 21, 2014 order, to grant a "new trial" (even though there has been no trial), or to certify certain issues for interlocutory appeal.  The Prim Entities ask the court to approve their proposed method for selling the one-third interest in Western Pacific Timber, LLC (the "Collateral WPT Interest") that they acquired on or about April 3, 2012 when the Blixseth Entities defaulted on several loans.  They also ask the court to expand this action to permit them to add a claim against Jessica Blixseth for unpaid rent on a Medina mansion she lives in while the Prim Entities attempt to foreclose on it.  Finally, yet another entity, Keewaydin Holdings, LLC ("Keewaydin"),

ORDER – 1

representing the sole member of WPT who has yet to weigh in on this action, asks to intervene to block the Prim Entities' proposed sale of the Collateral WPT Interest.

For the reasons stated below, the court rules as follows:

1) The court DENIES the Blixseth Entities' motion for reconsideration, new trial, or interlocutory appeal.  Dkt. # 121.

2) The court GRANTS the Prim Entities' motion for leave to amend their complaint.  Dkt. # 143.  They shall file their amended complaint no later than August 4, 2014.

3) The court DENIES the Prim Entities' motion to approve their proposed disposition of the Collateral WPT Interest.  Dkt. # 125.

4) The court GRANTS Keewaydin's motion to intervene (Dkt. # 131), subject to it filing a complaint-in-intervention no later than August 11, 2014.

5) Keewaydin and the Prim Entities must take steps described in this order to resolve their disputes over the disposition of the Collateral WPT Interest.

## II.  BACKGROUND & ANALYSIS

At the base of this sprawling and slow-paced litigation is a simple dispute.  WPT was, at one time, a three-member LLC with the Blixseth Entities, the Prim Entities, and Keewaydin (itself one of a number of entities under the control of James Dolan) holding equal ownership interests.[1]  The Blixseth Entities pledged their interest (the Collateral WPT Interest) to the Prim Entities as collateral for millions of dollars in loans.  They defaulted on those loans, and the Prim Entities seized the Collateral WPT Interest in April 2012.  As matters stand, the Blixseth Entities no longer have an interest in WPT, the Prim Entities hold both their original one-third interest as well as the Collateral WPT Interest, and Keewaydin continues to hold its one-third interest.  The Prim Entities,

---

[1] This court's prior orders have, where necessary, clarified which of the Blixseth and Prim Entities engaged in the conduct underlying that litigation.  The court does not repeat that discussion here.  Although the court will identify an individual or entity specifically where clarity demands, clarity usually demands referring collectively to the Blixseth and Prim Entities.

ORDER – 2

however, are obligated to effect a disposition of the Collateral WPT Interest, the proceeds of which will determine how much the Blixseth Entities still owe on the defaulted loans.

When the court last addressed this case, it had ruled following a January 2014 evidentiary hearing that the Prim Entities had yet to effect a disposition of the Collateral WPT Interest in compliance with the Uniform Commercial Code.  It also ruled, after expressing substantial doubts that its ruling made any difference at all, that the fair market value of the Collateral WPT Interest when the Prim Entities seized it in April 2012 was just over $12 million.  The court then directed the parties to attempt to agree on an appropriate disposition of the Collateral WPT Interest.

The Blixseth Entities, consistent with their conduct to date in this litigation, took an obstructionist position.  They asserted that the Prim Entities, as the secured party, bore sole responsibility for determining a commercially reasonable disposition of the Collateral WPT Interest.  The Blixseth Entities' plan (putting aside their motion to undo the court's decisions following the evidentiary hearing), it appears, is to lie in wait to see what becomes of the Collateral WPT Interest, then assert that whatever happened was unreasonable and that they are therefore entitled to damages.

The Prim Entities propose to dispose of the Collateral WPT Interest in what is nominally a public sale akin to an auction.  The Blixseth Entities object, of course.  Their objection, however, is not much of an obstacle.  They no longer have any rights as members of WPT, they apparently have no means to pay off the loans or reclaim their interest in WPT, and they have already announced their plan to contend that the Prim Entities' method of sale is unreasonable regardless of what method they use.

More of an obstacle to the Prim Entities' disposition plan is the appearance, for the first time, of Keewaydin, one of WPT's managers.  According to Keewaydin, the Prim Entities' proposed sale cannot be permitted because no one (except a Prim Entity) can become a member of WPT without the unanimous consent of WPT's members.  Keewaydin does not consent to any new member.  In Keewaydin's view, unless the Prim

ORDER – 3

Entities propose a disposition method to which it is willing to give its consent, there can be no disposition of the Collateral WPT Interest except to a Prim Entity.  To summarize the Prim Entities' plan to dispose of the Collateral WPT Interest: the current members of WPT are at an impasse, and the former member of WPT stands ready to object no matter what happens.

The court now considers, in Part II.A, II.B, and II.C, whether any of the motions currently before it will allow the parties to move past this stalemate.  Because they will not, Part II.D contains the court's instructions to the Prim Entities and Keewaydin to move toward a resolution.

**A.      Motion for Reconsideration**

The Blixseth Entities ask the court to reconsider both its decision that no one has effected a disposition of the Collateral WPT Interest and that the value of that interest as of April 2012 was about $12 million.  A motion for reconsideration must demonstrate either "manifest error in the prior ruling" or "new facts or legal authority [that] could not have been brought to [the court's] attention earlier with reasonable diligence."  Local Rules W.D. Wash. LCR 7(h)(1).  The Blixseth Entities meet neither standard.

As to the disposition question, the Blixseth Entities' argument consists of citation to a single case that it could have cited long ago.  That case suggests, at most, that until the Prim Entities effect a disposition of the Collateral WPT Interest, the Blixseth Entities might have a right to redeem that interest.  The Blixseth Entities suggest no ability to exercise their redemption rights, whatever they may be.  The court has never considered whether the Blixseth Entities have a redemption interest or other right to reclaim the Collateral WPT Interest, because it was never necessary to do so.  What the court has decided is that the Prim Entities, to date, have not effected a disposition of the Collateral WPT Interest.  Nothing in the Blixseth Entities' motion merits a different decision.

As to the question about the value of the WPT Interest as of April 2012, the Blixseth Entities harp on the court's refusal to allow them to rely on the appraisal reports

ORDER – 4

(or testimony) of Steven Prochnau.  As the court explained during the evidentiary hearing, the Blixseth Entities did not timely disclose Mr. Prochnau as a witness of any kind, whether as an expert required to provide a written report in accordance with Fed. R. Civ. P. 26(a)(2)(B), an expert with more limited disclosure obligations in accordance with Fed. R. Civ. P. 26(a)(2)(C), or a non-expert witness.  The evidentiary hearing record contains the court's reasoning for that decision, and the Blixseth Entities' motion does not convince the court to reconsider it.

Moreover, the admission of the Prochnau reports or of Mr. Prochnau's testimony was not likely to make a difference at the evidentiary hearing.  The primary evidence underlying the court's valuation decision was the expert testimony of Richard LaMont and Dr. Phillip Tedder.  Those witnesses persuasively rejected the notion that an owner of the timberlands that are WPT's primary asset could extract more value from the timberlands by a rapid harvest (like the one proposed in the Prochnau appraisals) than by a constant yearly harvest.  Even if the court had admitted the Prochnau reports or permitted testimony from Mr. Prochnau, there is no reasonable likelihood that the court's valuation decision would have changed.

The Blixseth Entities' motion was not merely for reconsideration, it was also an improperly noted motion for a "new trial" and to certify the issues it raised for interlocutory appeal.  By "new trial," the court assumes that the Blixseth Entities wish to have another evidentiary hearing.  The court denies that request, not only for the reasons stated above, but because of the doubts it expressed in the January 21 order as to whether the value of the Collateral WPT Interest as of April 2012 actually makes any difference in this litigation.  The court finds no reason for an interlocutory appeal.  At bottom, this is a dispute about money.  If the court has erred in its determinations to date, an appellate court can remedy that mistake once this action has reached a conclusion.  The court believes that the Blixseth Entities seek interlocutory appeal only to further delay this action.

ORDER – 5

**B.      The Court Cannot Approve the Prim Entities' Proposed Disposition of the Collateral WPT Interest.**

The Prim Entities propose to dispose of the Collateral WPT Interest by engaging an experienced timberland broker to solicit open-market bids in a national marketing campaign.  The minimum bid would be the $12 million at which the court valued the Collateral WPT Interest as of April 2012.  If the marketing campaign results in multiple minimum bids, the sale price would be determined in a live auction involving all of those bidders.  The Prim Entities would be authorized to make a credit bid of part or all of the indebtedness that the Collateral WPT Interest secures.

Even standing alone, the disposition the Prim Entities propose is suspect.  First, they do not inform the court of the maximum amount of their credit bid.  They have asserted in their motion to amend their complaint that the Blixseth Entities currently owe them about $45 million.  The court does not know if the Collateral WPT Interest secures all of that debt, but the court expects that the Prim Entities would assert their right to credit bid at or near that amount.  When the court assessed the fair market value of the Collateral WPT Interest *as of April 2012*, it explained that it had to treat that interest as a non-controlling interest in WPT.  One of the reasons for that determination was that there was no evidence that either of the parties for whom the Collateral WPT Interest would create a controlling interest in WPT, the Prim Entities or Keewaydin, were actually interested in acquiring the Collateral WPT Interest.  That is no longer the case.  The Prim Entities not only seek authority to make a credit bid of an unspecified amount, they state that it is their intent to make a bid.  If the credit bid maximum is as large as the court expects, then the outcome of auction that the Prim Entities propose is all but a foregone conclusion.  The Prim Entities have no reason to be conservative with their credit bid, they have asserted repeatedly that they do not expect to recover from the Blixseth Entities any amount approaching the total amount of their indebtedness.  For that reason, they can "spend" that indebtedness freely in an attempt to acquire the Collateral WPT Interest.  Knowing that, it seems unlikely that an open-market buyer would be interested in

ORDER – 6

1   participating in the sale process.  It makes little sense to bid with actual money against a

2   competitor who is bidding with credit that will not have value in any other context.

3           The Prim Entities' selection of the $12 million minimum bid value reflects their

4   ongoing misinterpretation of the relevance of the value of the Collateral WPT Interest as

5   of April 2012.  They contend that if they had not established that figure, then the Blixseth

6   Entities would now be able to complain that the minimum bid they have set for the

7   disposition is too low.  What will be relevant at disposition is the value of the Collateral

8   WPT Interest *at disposition*, and no one has presented evidence of the current value of

9   that interest.  Indeed, because the Prim Entities intend to bid at the disposition they have

10  proposed, it is no longer an open question whether to value the Collateral WPT Interest as

11  a controlling block.  It is a controlling block, and given transaction costs, it is likely that

12  anyone not able to use the Collateral WPT Interest as a controlling block will decline to

13  make a bid.  Thus, the auction that the Prim Entities propose is unlikely to establish a fair

14  market value for the disposition, it is likely to sharply undervalue the Collateral WPT

15  Interest.

16          Keewaydin represents the only entities other than the Prim Entities who are likely

17  to value the Collateral WPT Interest as a controlling block, but Keewaydin apparently

18  does not want to bid against the Prim Entities.  Instead, it asserts that it will not approve

19  the sale of the Collateral WPT Interest to anyone except a Prim Entity.  Whether it has

20  the right to object depends on the interpretation of the Consent Minutes that the members

21  of WPT executed in April 2008 when the Blixseth Entities executed the Membership

22  Pledge Agreement ("MPA") that encumbered the Collateral WPT Interest to secure the

23  loans from the Prim Entities.  The relevant paragraph of the Consent Minutes states as

24  follows:

25          RESOLVED, that it is currently understood by all Members that should
        [the Collateral WPT Interest] be sold or otherwise transferred pursuant to
26      the [MPA], the Uniform Commercial Code (or functional state equivalent)
        and/or any other applicable laws, in full or partial satisfaction of the
27      obligations set forth in the [MPA], that a new individual or entity will

28  ORDER – 7

become a full Member of [WPT].  Provided that said new Member is either
Wayne L. Prim, Wayne L. Prim Jr., or an entity or trust controlled by either
of them, by execution of these Consent Minutes, each Member hereby
waives any objection to such new Member becoming a full Member with
all rights appurtenant thereto.  Each member by execution of these Consent
Minutes hereby grants its written pre-approval of any transferee receiving
[the Collateral WPT Interest], which transfer is in full or partial satisfaction
of the obligations set forth in the [MPA], and such transfer (or if multiple
transfers) shall be deemed a permitted transfer(s) pursuant to Article 11 of
the [WPT] Operating Agreement.

In the Prim Entities' view, the Consent Minutes are permission for it to sell the Collateral
WPT Interest to anyone.  In Keewaydin's view, the Consent Minutes are permission to
sell the Collateral WPT Interest to no one except a Prim Entity.

On their face, the Consent Minutes are ambiguous.  They acknowledge that the
Collateral WPT Interest will be owned by a "new individual or entity" in the event of a
sale or transfer following the Blixseth Entities' default.  It is also plain that if the "new
individual or entity" is a Prim Entity (or one of the two men who control those entities),
no one can object to the transfer.  The dispute arises from the sentence that declares that
each member "grants its written pre-approval of *any* transferee" receiving the Collateral
WPT Interest.  The court has emphasized "any," just as the Prim Entities do, because the
Prim Entities contend that the sentence authorizes any transferee, not just a Prim Entity.
That interpretation requires the court to fixate on a single sentence, rather than the entire
paragraph.  The remainder of the paragraph grants the rights of "a full Member" only to a
Prim Entity, while acknowledging that no one knew in 2008 what Prim Entity might
acquire the Collateral WPT Interest.

In addition, the consent that the WPT members granted to "any transferee" was
not consent to "full Member[ship]" but rather consent to deem that transfer a "permitted
transfer(s)" pursuant to Article 11 of the WPT Operating Agreement.  The Operating
Agreement, in turn, defines "Permitted Transfers" as transfers "with the prior written
consent of all other Members."  WPT Op. Agr. ¶ 11.5.  But a "Permitted Transfer" is not
the final step in a transferee becoming a member of WPT.  A permitted transferee

ORDER – 8

becomes a member only after it executes an agreement to be bound by the Operating Agreement and the members unanimously approve the substitution of the transferee as a member. WPT Op. Agr. ¶ 11.6.

Because the Consent Minutes (and perhaps the Operating Agreement) are ambiguous as to the transfer the WPT members envisioned if the Blixseth Entities were to default, the court likely must consider extrinsic evidence. Keewaydin implicitly recognizes as much, because it asks the court to consider the drafting history of the Consent Minutes as well as Mr. Dolan's understanding of the meaning of that document. The Prim Entities also recognize that extrinsic evidence is at issue, although they cite only Washington law, whereas the Consent Minutes address an Operating Agreement that is expressly governed by Oregon law and an MPA that secures notes governed by Nevada law.[2]

Putting aside ambiguities in the Consent Minutes and the Operating Agreement, there is another hurdle to the disposition that the Prim Entities propose. The Operating Agreement contains an acknowledgment that WPT membership interests are unregistered securities, and that any sale of those interests at least potentially implicates federal and state securities laws. WPT Op. Agr. ¶ 11.4. The Agreement declares that "NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT," no membership interest can be transferred unless it is registered in accordance with a applicable law, or unless someone obtains an opinion from an attorney "satisfactory to the managers" that registration is not required. *Id.* The Prim Entities do not purport to clear this hurdle, they simply ask the court to ignore it.

---

[2] Throughout this case, the parties have consistently ignored choice-of-law questions. That would be of little concern if they could cite one body of law consistently, but they do not. Instead they cite the law of whatever jurisdiction suits them. The court urges the parties to reach agreement as to a choice of law. If they cannot, they must at least squarely address any disputes over choice of law. If their future motions rely on the same haphazard approach to choice of law as the motions that have come before, the court may simply strike them.

ORDER – 9

1    Finally, Keewaydin asserts that the Prim Entities cannot conduct the sale they

2    propose without violating their fiduciary duties as members of WPT.  They argue that the

3    Prim Entities cannot conduct their proposed disposition without publicly disclosing

4    WPT's confidential information to the detriment of WPT.

5          The court's comments on Keewaydin's objection to the Prim Entities' proposed

6    disposition are preliminary, because no one has put that objection in a context that allows

7    the court to resolve it.  The parties too often treat the court like a referee who can simply

8    decide the parties' disputes at their whim.  But this is a federal court, and the court can

9    decide matters only within the context of the standards applicable to a motion to dismiss,

10   a motion for summary judgment, or some other recognized adjudicatory procedure.

11   Unless the parties consent (as the Prim and Blixseth Entities did when they agreed to

12   determine the April 2012 value of the Collateral WPT Interest at an evidentiary hearing),

13   the court cannot make a decision except in accordance with those standards or at a bench

14   trial.  Keewaydin's motion does not suggest it is a summary judgment motion or any

15   other recognized adjudicatory method, and the court will not decide the dispute that the

16   motion raises until the parties properly position it for adjudication.

17         In light of the foregoing discussion, it is plain that Keewaydin has the right to

18   intervene in this action.  Federal Rule of Civil Procedure 24(a) governs intervention as a

19   matter of right.  An applicant for intervention as of right has the burden to establish four

20   elements:

21        (1) [that] it has a significant protectable interest relating to the property or
           transaction that is the subject of the action; (2) [that] the disposition of the
22         action may, as a practical matter, impair or impede the applicant's ability to
           protect its interest; (3) [that] the application is timely; and (4) [that] the
23         existing parties may not adequately represent the applicant's interest.

24   *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002).  A court must

25   permit intervention when a non-party satisfies the requirements for intervention as of

26   right.  *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  Here, Keewaydin's

27   interest in controlling the membership of WPT is a significant one, the Prim Entities'

28   ORDER – 10

plan to dispose of the Collateral WPT Interest places that interest in jeopardy, and it is plain that neither the Blixseth Entities nor the Prim Entities will adequately protect Keewaydin's interest.  The only significant question is over the timeliness of Keewaydin's application.  This case has been pending for nearly two years.  But only recently has it become apparent that the Prim Entities wish to sell the Collateral WPT Interest at a public auction that would potentially violate the Consent Minutes. Keewaydin could have intervened sooner, to be sure, but no prejudice arises from it waiting until it became clear that its interests were in jeopardy.  Although this case has been pending for nearly two years, it has scarcely progressed toward a resolution.

The court will permit Keewaydin to intervene.  Keewaydin must, however, file a complaint-in-intervention, asserting one or more claims against the parties.  At a minimum, it asserts a claim for declaratory relief that the Prim Entities cannot sell the Collateral WPT Interest to anyone other than a Prim Entity.  Once it has filed a complaint-in-intervention, it must take steps to vindicate its interests.  As the court has noted, Keewaydin has so far ignored civil procedure, which governs how and when a court can make decisions on disputed questions of fact.  The meaning of the Consent Minutes is a question that at least potentially requires the court to decide disputed factual issues arising from evidence extrinsic to those minutes.  The court cannot resolve those disputes outside of trial, a summary judgment motion, or the parties' consent to a different method of adjudication.

## C.    Motion to Amend

This District's bankruptcy court recently dismissed the bankruptcy petition of Kawish, LLC, one of the Blixseth Entities.  That permitted the Prim Entities to resume their efforts to foreclose deeds of trust to a Kawish-owned home in Medina, Washington. Those deeds of trust secure another $4.3 million in debt that the Blixseth Entities owe to the Prim Entities.  According to a complaint that the Blixseth Entities recently filed against the Prim Entities and the foreclosure trustee in King County Superior Court, a

ORDER – 11

trustee's sale occurred last month, and one of the Prim Entities purchased the Medina home for a credit bid of $250,000.  Dkt. # 154.

The Prim Entities are now also free to pursue their claim that any rents deriving from the Medina home belong to them.  The deeds of trust provide that rents deriving from the Medina home are additional security.  Currently, Kawish, an entity that Mr. Blixseth controls, has leased the Medina home to Mr. Blixseth's wife, Jessica.  Until a few months ago, the lease required bi-yearly payments of $55,000.  The Prim Entities assert that they are owed more than $80,000 in unpaid rent.  The Blixseth Entities assert (citing nothing but California law) that Ms. Blixseth's possessory interest is senior to any interest the Prim Entities acquired via the deed of trust.  They also assert that without the consent of Kawish, the Prim Entities cannot force an assignment of Ms. Blixseth's rent.  Finally, they observe that Kawish recently negotiated a new lease with Ms. Blixseth that excuses her from any obligation to pay rent.

The court will not resolve the parties' dispute over unpaid rent at this time, and given that it is but a drop in the proverbial bucket when compared to the total indebtedness of the Blixseth Entities, it may never resolve that dispute.  If it does resolve that dispute, the Blixseth Entities may wish to consider whether reasserting the arguments they made in opposition to the motion to amend would subject them to Rule 11 sanctions.

What matters now is whether, given the liberal standards that apply to a motion to amend, it makes any sense to prevent the Prim Entities from adding yet another dispute over the Blixseth Entities' debts to this lawsuit.  The court is exceedingly reluctant to do so, given the minimal progress the parties have made in the last two years.  But the Prim Entities raise at least a colorable claim to the unpaid rent, and the court will not foist that claim off on another court.

ORDER – 12

**D.  The Next Step in Resolving in this Case is to Resolve the Dispute Between the Prim Entities and Keewaydin.**

In the court's view, there is just one possibility (and a slim one at that) that this case will reach a resolution that the parties can accept.  The parties must reach their own resolution.  Keewaydin has suggested that the court order mediation, but the court will not do that, because it is convinced that, at a minimum, the Blixseth Entities are uninterested in any reasonable resolution of this matter.  Based on their conduct to date, the court believes that they will accept nothing less than a determination that the Collateral WPT Interest is worth more than enough to satisfy all of their debts to the Prim Entities.  But if the court is wrong about that, the parties are free to settle this dispute, and the court encourages them to do so.

Barring settlement, this litigation must proceed.  The next step is to determine what rights Keewaydin has with respect to the disposition of the Collateral WPT Interest. Keewaydin and the Prim Entities might resolve their dispute by agreement, although that also seems unlikely.  If they cannot, they must file a joint statement no later than August 29, 2014, in which they state their preferred method of resolving that dispute, whether by a summary judgment motion, by agreeing to submit that dispute to the court for resolution without regard to the standards that apply to a summary judgment motion, by conducting a trial, or by some other method.  Keewaydin and the Prim Entities may, if they wish, solicit the input of the Blixseth Entities.

### III.  CONCLUSION

For the reasons stated above, the court orders as follows:

1) The court DENIES the Blixseth Entities' motion for reconsideration, new trial, or interlocutory appeal.  Dkt. # 121.

2) The court GRANTS the Prim Entities' motion for leave to amend their complaint.  Dkt. # 143.  They shall file their amended complaint no later than August 4, 2014.

ORDER – 13

3)  The court DENIES the Prim Entities' motion to approve their proposed disposition of the Collateral WPT Interest.  Dkt. # 125.

4)  The court GRANTS Keewaydin's motion to intervene (Dkt. # 131), subject to it filing a complaint-in-intervention no later than August 11, 2014.

5)  No later than August 29, 2014, the Prim Entities and Keewaydin shall either inform the court that they have resolved their dispute, or they file a joint statement as to their proposals for resolving their dispute.

6)  The court acknowledges the parties' stipulation (Dkt. # 123) to voluntarily dismiss the Blixseth Entities' ninth cause of action, relating to the dissolution of Overlook Partners, LLC.  That claim is no longer at issue in this action.

DATED this 28th day of July, 2014.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 14