HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

395 LAMPE, LLC, et al.

      Plaintiffs, Counterclaim Defendants,

   v.

KAWISH, LLC, et al.,

      Defendants, Counterclaim Plaintiffs, Third-Party Plaintiffs,

   v.

WAYNE L. PRIM, et al.,

      Third-Party Defendants.

CASE NO. C12-1503RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the Prim Entities' motion to compel joinder of a claim pending in King County Superior Court and the Blixseth Entities' motion to remand this action to King County Superior Court.  For reasons stated herein, the court DENIES both motions.  Dkt. ## 181, 191.  This order concludes with instructions to the Prim Entities to dispose of the Collateral WPT Interest, seek court approval for a disposition of that interest, or show cause why the court should not initiate proceedings to determine the consequences of their failure to effect a disposition of the Collateral WPT Interest.

ORDER – 1

## II.  BACKGROUND & ANALYSIS

The court proceeds, as it consistently has, on the assumption that the principal dispute underlying the morass of claims and counterclaims between the Blixseth Entities and the Prim Entities is a dispute over the proper disposition of what the court has called the Collateral WPT Interest.  The Collateral WPT Interest, a one-third interest in a limited liability company called Western Pacific Timber, once belonged to the Blixseth Entities, who pledged it as collateral for a series of loans from the Prim Entities.  It now belongs to the Prim Entities, who seized it when the Blixseth Entities defaulted on those loans.  Perhaps the court is mistaken in its assumption about the centrality of this dispute; but the parties have never suggested another way to bring this case to a resolution.  Indeed, the parties seem disinterested in bringing this case to a resolution.

To illustrate the parties' disinterest, the court notes that when it last considered the dispute over the Collateral WPT Interest, in July 2014, it noted various concerns about the Prim Entities' plan to sell that interest at an "auction" where one of the Prim Entities was all but certain to be the only bidder.  But the court did not resolve those concerns, because an entity called Keewaydin, which stands in the shoes of those who own another one-third interest in WPT, intervened to assert that the Prim Entities could not dispose of the Collateral WPT Interest at all because of limitations in the WPT operating agreement. The court put the central dispute on hold, so that it could address the dispute between the Prim Entities and Keewaydin.  That was a frustrating process, as described in a series of the court's orders in September and October 2014.  But perhaps it ended well, because in December 2014, Keewaydin voluntarily dismissed its claims with prejudice.  2014 ended with a statement from the Prim Entities that they "intend[ed] to proceed with a public sale of the [Collateral WPT Interest]," presumably with Keewaydin's consent.  That was December 30.  Since then, the court has no indication that the Prim Entities have done anything to dispose of the Collateral WPT Interest.

ORDER – 2

### A. The Parties Have Started a New Dispute in State Court.

Why the delay? Surely not because of the motions now pending before the court, which have nothing to do with the disposition of the Collateral WPT Interest. Those motions instead concern the Prim Entities' efforts to seize other collateral from the Blixseth Entities. After this District's bankruptcy court dismissed two bankruptcy actions in which the Blixseth Entities sought to protect a mansion in Medina secured by a deed of trust to one of the Prim Entities, the Prim Entities sought to foreclose that deed of trust. They succeeded, it appears. The mansion sold in a June 2014 foreclosure sale in which one of the Prim Entities was apparently the sole bidder.

The Blixseth Entities sued the Prim Entities (and the foreclosure trustee) in King County Superior Court. They asked that court to set aside the trustee's sale, among other relief. The Prim Entities filed a motion to dismiss that was almost entirely successful. In an October 6, 2014 order, the Superior Court dismissed the complaint except as to one narrow issue. It held that the Blixseth Entities could continue to pursue a claim for declaratory judgment in which Tim Blixseth sought "a determination of his personal liability, as guarantor pursuant to RCW 61.24.100(5), through the establishment of the fair value of the [Medina] property at the time of sale." It also allowed the Prim Entities to pursue a claim for damages caused by the Blixseth Entities' wrongful filing of a lis pendens on the Medina property.

The Superior Court also stayed the action "to allow any party to move the federal court to accept supplemental jurisdiction of this matter." The court understands the impetus for that order. The Medina mansion was collateral for many of the same loans for which the Collateral WPT Interest was collateral. The Blixseth Entities insist that the Collateral WPT Interest is worth enough money to extinguish all of their debts. They have so far had no success in proving that assertion, but they have made it again in the state court. The dispute over the value of the Medina mansion, like the dispute here, is one in which a court must determine the value of collateral the Prim Entities seized to

ORDER – 3

determine how much the Blixseth Entities still owe.  It would be sensible to resolve that dispute in this court.  The problem is that that Blixseth Entities have not chosen that sensible approach.

**B.    The Court Cannot Expand This Action by "Compelling Joinder" of the Blixseth Entities' State Law Claims, and It Will Not Remand this Action to State Court.**

Two motions followed the Superior Court's invitation: one that that court cannot grant, and one that the court will not grant.  The first was the Prim Entities' "motion to compel joinder" of the claims the Blixseth Entities asserted in state court.  The Prim Entities ask the court to order the Blixseth Entities to bring their most recent state court claims here.

### 1.    Motion to Compel Joinder

The court is aware of no authority that permits a federal district court to "compel joinder" of state law claims.  That is so even if the court would have jurisdiction over those claims if they were brought before it.  The Prim Entities insist that the court has supplemental jurisdiction over those claims, because they relate to the claims in this action.  But the Prim Entities have put the cart before the horse.  The court cannot consider whether it has jurisdiction over a claim until someone brings that claim before it.  Federal law provides many mechanisms to bring claims before it.  A party can voluntarily bring its claims to federal court.  Where a removal statute applies, a defendant can bring a plaintiff's claims to federal court.  The Prim Entities have not removed the Superior Court action, and they do not suggest they can do so.  The court can compel the joinder of a "required party" via Rule 19 of the Federal Rules of Civil Procedure, but there is no suggestion that the Rule applies here.  Where no removal statute applies, and no other statute or rule allows the court to wrest control over a state court suit, the court cannot act.  The Prim Entities cite no authority to the contrary, and the court is aware of none.

The Blixseth Entities will not agree to bring their state court claims here.  They assert that the court could not exercise supplemental jurisdiction over those claims.  The

ORDER – 4

court need not decide whether the Prim Entities or the Blixseth Entities have the better view of supplemental jurisdiction. Both of them ignore the fundamental question: what authority permits a federal district court, absent consent or a ground for removal, to take control of claims asserted in state court?

Moreover, no party addresses another concern: the Superior Court has already adjudicated all but one portion of one claim in the action before it. The Superior Court issued no judgment as to the claims it adjudicated. *See* Wash. CR 54. Nonetheless, the Blixseth Entities have petitioned the Washington Court of Appeals for discretionary review via Washington Rule of Appellate Procedure 2.3(b). So far as the court is aware, the Court of Appeals has neither granted nor denied that petition. The Prim Entities thus ask the court to wrest jurisdiction from not only the Superior Court (which has already ruled, in large part), but from the Court of Appeals. The court observes that it is likely that the Superior Court and Court of Appeals would be happy to have jurisdiction wrested from them. But again, there is no authority that allows the court to do so.

There are perhaps ways to put the sole unadjudicated dispute from the Superior Court action in front of this court without the Blixseth Entities' consent. The Prim Entities, for example, might seek declaratory judgment in this court as to Mr. Blixseth's liability as a guarantor of the loans secured by the Medina mansion. The court suggests no view on actions the state courts might take to defer or tailor resolution of the claims before them pending a resolution in this court. The court regrets that the parties have steered a portion of this dispute to state court, but the court cannot cure that problem by inventing a compulsory joinder procedure.

### 2. Motion to Remand

While the motion to compel joinder was pending, the Blixseth Entities moved to remand this entire action to King County Superior Court. They pointed out that they removed this action here via 28 U.S.C. § 1452, which permits removal of "any claim or cause of action in a civil action" where the "district court has jurisdiction of such claim or

ORDER – 5

1    cause of action under section 1334 of this title." Section 1334, for its part, grants district
2    courts "original but not exclusive jurisdiction of all civil proceedings arising under title
3    11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  At the time of
4    removal, the Blixseth entities had a "civil proceeding[] . . . arising in or related to [a]
5    case[] under title 11"—a petition pending in this District's bankruptcy court.  As of July
6    2014, the bankruptcy court had dismissed all petitions.  This case remained here, and no
7    party suggested that it should return to state court.  That changed in November 2014,
8    when the Blixseth Entities filed their opposition to the Prim Entities' motion to compel
9    joinder.  They argued for the first time that not only was the court powerless to force
10   them to join their claims from the pending Superior Court action, but that remand of this
11   case was mandatory.  They later filed their motion to remand to make the same argument.

12         The court retains subject matter jurisdiction over this action.  It had original
13   jurisdiction via 28 U.S.C. § 1334(b).  It retained jurisdiction after the bankruptcy
14   proceedings terminated.  *In re Carraher*, 971 F.2d 327, 329 (9th Cir. 1992).  It had (and
15   still has) discretion to discontinue its exercise of jurisdiction, subject to many of the same
16   factors that guide the court's exercise of discretion of claims over which it exercises
17   supplemental jurisdiction.  *Id.*  The Blixseth Entities mistakenly rely on *Sea Hawk
18   Seafoods, Inc. v. Alaska (In re Valdez Fisheries Development Ass'n, Inc.)*, 439 F.3d 545
19   (9th Cir. 2006).  There, the court held that a bankruptcy court could not exercise
20   jurisdiction via 28 U.S.C. § 1334(b) when, after dismissing the bankruptcy case *and all
21   related proceedings*, the parties returned to the bankruptcy court for a determination on a
22   new state-law claim related to the bankruptcy case.  *Id.* at 547-49.  That ruling has no
23   application here, where the claims currently in this action (save one that the Prim Entities
24   added last summer) were pending here when the bankruptcy court dismissed the petitions
25   before it.

26         The court has discretion to decline to exercise jurisdiction over this case.
27   *Carraher* declares as much.  So does 28 U.S.C. § 1452(b), which permits a court to
28   ORDER – 6

remand a claim removed to the court via § 1334 "on any equitable ground." But the court is firmly convinced that the only appropriate exercise of discretion is to retain jurisdiction over this case. The court has invested substantial resources in this case, and any other court who hears it will be forced to duplicate that effort. Moreover, declining jurisdiction over this case would only reward the Blixseth Entities (who selected this forum) in their forum-shopping campaign. The court has chronicled that campaign in its past orders, and does not repeat the discussion here. It suffices to conclude that the court will not permit the Blixseth Entities to continue that campaign as long as the court has discretion to do otherwise.

**C.     The Parties Must Move This Action Forward.**

Having rejected the parties' efforts to expand or remand this action, the court returns to the disputes before it. Again, the court proceeds on the assumption that a disposition of the Collateral WPT Interest is a predicate to resolving all claims and counterclaims in this action. The parties are free to suggest a different approach; but they have not done so for years.

No later than April 30, 2015, the Prim Entities shall elect one of the following options:

1) They shall file a motion proposing a proper disposition of the Collateral WPT Interest;

2) They shall inform the court that they are effecting a disposition of the Collateral WPT Interest, explain that disposition, and explain to the court when it is likely to be complete; or

3) They shall show cause why the court should not initiate proceedings to determine the consequences of their failure to effect a disposition of the Collateral WPT Interest.

ORDER – 7

### III.  CONCLUSION

For the reasons stated above, the court DENIES the Prim Entities' motion to compel joinder (Dkt. # 181) and DENIES the Blixseth Entities' motion to remand (Dkt. # 191).  The Prim Entities shall comply with the court's instructions in Part II.C.

DATED this 8th day of April, 2015.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 8